Filed 8/3/26  P. v. Dawson CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064914 |
| v. | (Super. Ct. No. 23NF1021) |
| RICARDO LAROY DAWSON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge. Affirmed in part, reversed in part, and remanded with directions.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Collette C. Cavalier and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Appellant.

\*          \*          \*

Appellant Ricardo Dawson was convicted of three charges, including two counts of conspiracy. On appeal, he contends that he can only be convicted of one conspiracy count because the two conspiracy convictions arose from a single agreement. The Attorney General concedes that Dawson could only be convicted of a single count of conspiracy under these circumstances. We agree and reverse Dawson's conviction on count 3.

FACTS[1]

## A.     Factual Background

Early on the morning of July 5, 2022, C.B. was in the kitchen of her condominium in Anaheim when she heard an unfamiliar noise coming from near her front door. C.B. walked down a set of stairs toward the front door where she saw what looked like an explosive device. The device, which appeared similar to a red stick of dynamite, was burning. She ran toward the device because she was worried it would blow up and burn her home down. The device blew up as C.B. reached for it, and the condominium filled with smoke. After C.B.'s husband called 911, she was transported to the hospital with severe burns to her hands and feet, as well as lacerations to her bicep,

---

[1] Dawson's reply brief explains that he does not "*challenge the sufficiency of the evidence* in support of counts 2 and 3." (Italics in reply brief.) Because the sufficiency of the evidence underlying Dawson's convictions for conspiracy as to counts 2 and 3 is not in dispute and based on the narrow issue on appeal, we provide a brief summary of the facts.

which required stitches. She was unable to walk without a walker for almost two months; she also suffered slight hearing loss in her right ear.

C.B. suspected her former boss, K.D., may have been involved because C.B. had successfully sued K.D. the year before for wage and hour violations. C.B. had not had any contact with K.D. since she left the company in July 2021, and all litigation and contact with K.D. had been handled by C.B.'s attorney.

Surveillance video from the front of C.B.'s home showed Dawson at the time of the bombing. During a search of Dawson's bedroom, police found a pair of shoes, a brown coat, and a blue backpack which matched what Dawson was wearing on the surveillance video. Police also found homemade explosive devices consistent with the explosive device recovered at C.B.'s home, as well as multiple firearms.

A witness saw a Mercedes leaving the crime scene following the explosion, and investigators observed a similar Mercedes parked in front of Dawson's home. Using geofence data from Google, investigators learned that Dawson was in the area around C.B.'s home on July 4, 2022.

On the morning of September 22, 2022, as C.B. was getting out of her car in front of her condo, she noticed a gray Chrysler van slowly drive past her. The van then reversed and stopped about six to eight feet away from her. C.B. noticed a gun barrel resting in the corner of an open window of the van. She felt a "big thud" on the side of her body and ran in front of her car to hide. C.B. noticed she was covered in blood and called 911 to report she had been shot; she was treated in the hospital for a gunshot wound.

Police later determined that Dawson had rented the van on September 18, 2022, and returned it on September 26, 2022. The van was driving near C.B.'s condo the day before the shooting, and cell phone tower

data showed Dawson's phone was near C.B.'s home the morning she was shot.

I.E., testifying pursuant to a use immunity agreement, stated that she and Dawson had been dating for a few years at the time of the attacks on C.B. On July 5, 2022, Dawson picked up I.E. from her daughter's house in a black Mercedes. They drove about 30 minutes to what Dawson claimed was a friend's house. Around 3:00 a.m., they parked in front of C.B.'s condo and smoked methamphetamine. Dawson later instructed I.E. to get in the driver's seat, drop him off in front of the condos, park the Mercedes at the corner, and wait for him. Approximately 20 minutes later, Dawson got back in the car and said, "Let's go." When I.E. asked Dawson where he had gone, Dawson replied that "he just went to go scare someone."

I.E. testified she met J.A. through Dawson. J.A. and Dawson were roommates in 2022 before the bombing. J.A. and Dawson texted each other frequently, including the day of the bombing.

Phone records showed that J.A. also had phone communications with C.B.'s former boss K.D. on July 3, 2022 and on September 10, 2022. Investigators also discovered that K.D. paid J.A. $800 in 2022. An investigator testified that police believed K.D. and J.A. worked together to harm C.B. but had been unable to prove their theory.

B.    *Procedural History*

Dawson was charged with explosion causing mayhem and great bodily injury (Pen. Code,[2] § 18755, subd. (b); count 1), conspiracy to discharge a firearm from a motor vehicle (§§ 182, subd. (a)(1), 26100, subd. (c); count 2), and conspiracy to commit assault with a firearm (§§ 182, subd. (a)(1), 245,

---

[2] All further statutory references are to the Penal Code.

subd. (a)(2); count 3). It was also alleged that Dawson had a prior serious felony conviction and a prior strike conviction (§§ 667, subds. (a)(1), (d) & (e)(1), 1170.12, subds. (b), (c)(1)).

A jury convicted Dawson of all three counts. The trial court found true that Dawson had suffered a prior serious felony and a prior strike conviction. The court sentenced Dawson to a total term of 29 years to life, comprised of 19 years to life on count 1 and a consecutive term of 10 years to life on count 2. The court imposed and stayed sentence on count 3.

## DISCUSSION

Dawson argues there was insufficient evidence to support his convictions of conspiracy in counts 2 and 3 because both convictions arose from a single agreement and the single criminal objective of shooting C.B. The Attorney General concedes that Dawson may only be convicted of a single count of conspiracy based on a single agreement. We concur and reverse Dawson's conviction on count 3.

## I.

### STANDARD OF REVIEW

Where a defendant argues the evidence was insufficient to support a conviction, we "" "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value— such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." "" (*People v. Prince* (2007) 40 Cal.4th 1179, 1251.) "We presume " "in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.] This standard applies whether direct or circumstantial evidence is involved." (*Ibid.*)

5

## II.

### DAWSON CANNOT BE CONVICTED OF TWO COUNTS OF CONSPIRACY ARISING FROM THE SAME AGREEMENT

*A.    Factual Background*

As noted, Dawson was convicted in count 2 of conspiracy to commit the crime of discharge of a firearm from a motor vehicle and in count 3 of conspiracy to commit the crime of assault with a firearm. The prosecution alleged the same three overt acts in support of both conspiracy counts: (1) Dawson "rented a Chrysler Pacifica van with license plates 8YLA730 on September 18, 2022"; (2) "an unknown co-conspirator drove that van to the victim's house address on September 22, 2022"; and (3) "an unknown co-conspirator fired their firearm from the passenger's side window of the van which struck the victim causing her injury."

During closing argument, the prosecutor repeatedly stated that counts 2 and 3 were based on a single agreement to commit a single shooting:

"You have your [c]ount 2 and [c]ount 3, conspiracy to commit those different crimes, conspiracy to commit shooting a firearm from a motor vehicle at a person, and then . . . conspiracy to commit assault with a firearm. I'm not going to spend a lot of time on those because, again, we have that video. She was shot by a shotgun, and you heard her testimony, you saw the BBs, the wounds in her side. . . . [¶] These are not two separate random incidents that occurred with the same victim at the same location . . . ."

"So to prove the conspiracies, [c]ounts 2 and . . . 3, was there an intent to agree, and did they defend and agree to commit a discharge of a firearm, and did he also agree for the [c]ount 3, assault with a firearm. So did he intend to agree and is there an agreement?"

6

"These crimes are committed together, same reason, same purpose, to hurt [C.B.], to scare [C.B.] for what she's done, whether it's to sue Ms. Daniels or just living. [¶] . . . But this was an agreement between multiple individuals to commit these acts on September 22nd because we know there were multiple people involved in that shooting. There's a driver and shooter."

Furthermore, during closing argument, the prosecutor relied on the same three overt acts as alleged in the information to argue that there was a single agreement between Dawson and an unknown co-conspirator to shoot C.B. The prosecutor never argued there were separate agreements to shoot C.B. or that there were separate shootings.

At sentencing, the trial court stated, "I seem to get the impression . . . that [the parties] concede that [c]ounts 2 and . . . 3 [may not both be imposed under section] 654 as they address the September 22nd shooting." Based on this consensus, the court stayed Dawson's conviction on count 3.

## B.     Legal Standard

"It is well settled that the essence of the crime of conspiracy is the agreement, and thus it is the number of the agreements (not the number of the victims or number of statutes violated) that determine the number of the conspiracies." (*People v. Meneses* (2008) 165 Cal.App.4th 1648, 1669 (*Meneses*); *People v. Lopez* (1994) 21 Cal.App.4th 1551, 1557 ["'One agreement gives rise to only a single offense, despite any multiplicity of objects'"].) "The gist of the crime of conspiracy . . . is the agreement or confederation of the conspirators to commit one or more unlawful acts . . . ." (*Braverman v. United States* (1942) 317 U.S. 49, 53.) "'The conspiracy is the crime, and that is one, however diverse its objects.'" (*Id.* at p. 54.)

7

*C.*    *Analysis*

Here, according to the allegations of the information, the evidence presented at trial, and the prosecutor's closing argument, there was a single agreement to commit one shooting of C.B. on September 22, 2022. Therefore, Dawson could only be convicted of a single count of conspiracy. That the single shooting may have violated two separate criminal statutes is immaterial. (See, e.g., *People v. Patrick* (1981) 126 Cal.App.3d 952, 965 [noting that "a single agreement to commit acts which, if completed, would constitute more than one substantive crime, is but a single conspiracy"]; *Meneses, supra,* 165 Cal.App.4th at p. 1669 ["Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes"].)

The fact the trial court stayed punishment on count 3 pursuant to section 654 does not render the error harmless because there can only be one conspiracy conviction for a single agreement under the above authorities. "If the felony is conspiracy to commit two or more felonies which have different punishments and the commission of those felonies constitute but one offense of conspiracy, the penalty shall be that prescribed for the felony which has the greater maximum term." (§ 182, subd. (a).) Here, because the maximum punishment for count 2 is seven years (§ 26100, subd. (c)) and the maximum punishment for count 3 is four years (§ 245, subd. (a)(2)), count 3, having the lesser maximum term, must be reversed.

## DISPOSITION

Dawson's conviction on count 3 is reversed. The judgment is otherwise affirmed. On remand, the trial court is directed to prepare an

amended abstract of judgment to dismiss count 3 and to forward a certified copy to the Department of Corrections and Rehabilitation.


                              SCHWARM, J.*

WE CONCUR:


DELANEY, ACTING P. J.


SERVINO, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.